IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

MICHAEL B. M.,

          Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,[1]

          Defendant.

Civil Action No.
3:20-cv-0946 (DEP)

---

APPEARANCES:                                OF COUNSEL:

FOR PLAINTIFF

LEGAL AID SOCIETY OF MID-NY                 ELIZABETH V. LOMBARDI, ESQ.
221 South Warren Street, Suite 310
Syracuse, New York 13202

FOR DEFENDANT

SOCIAL SECURITY ADMIN.                      CHRISTOPHER L. POTTER, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203

---

[1]     Plaintiff's complaint named Andrew M. Saul, in his official capacity as the Commissioner of Social Security, as the defendant. On July 12, 2021, Kilolo Kijakazi took office as the Acting Social Security Commissioner. She has therefore been substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in order to effectuate this change. *See* 42 U.S.C. § 405(g).

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[2] Oral argument was conducted in connection with those motions on January 5, 2022, during a telephone conference held on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, a transcript of which is attached and incorporated herein by

---

[2] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

2

reference, it is hereby

ORDERED, as follows:

1) Plaintiff's motion for judgment on the pleadings is GRANTED.

2) The Commissioner's determination that plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is VACATED.

3) The matter is hereby REMANDED to the Commissioner, without a directed finding of disability, for further proceedings consistent with this determination.

4) The clerk is respectfully directed to enter judgment, based upon this determination, remanding the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

_____
David E. Peebles
U.S. Magistrate Judge

Dated: January 10, 2022
Syracuse, NY

```
UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------x
MICHAEL BEN M.,

                              Plaintiff,

vs.                            3:20-CV-946

KILOLO KIJAKAZI, COMMISSIONER OF
SOCIAL SECURITY,


                              Defendant.
-----------------------------------------x
```

Transcript of a **Decision** held during a Telephone Conference on January 5, 2022, the HONORABLE DAVID E. PEEBLES, United States Magistrate Judge, Presiding.

A P P E A R A N C E S

(By Telephone)

| | |
|---|---|
| For Plaintiff: | LEGAL AID SOCIETY OF MID-NEW YORK<br>Attorneys at Law<br>221 S. Warren Street, Suite 310<br>Syracuse, New York  13202<br>  BY:  ELIZABETH V. LOMBARDI, ESQ. |
| For Defendant: | SOCIAL SECURITY ADMINISTRATION<br>Office of General Counsel<br>J.F.K. Federal Building<br>Room 625<br>Boston, Massachusetts  02203<br>  BY:  CHRIS LEWIS POTTER, ESQ. |

*Jodi L. Hibbard, RPR, CSR, CRR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York  13261-7367*
*(315) 234-8547*

1              (The Court and all counsel present by
2           telephone.)
3              THE COURT:  Let me begin by thanking both of you
4     for excellent presentations.  I've enjoyed working with you.
5              Plaintiff commenced this proceeding pursuant to 42
6     United States Code Sections 405(g) and 1383(c)(3) to
7     challenge an adverse determination of the Commissioner of
8     Social Security finding that he is not entitled to the
9     benefits for which he applied.
10             The background is as follows:  Plaintiff was born
11    in January of 1982 and is currently just short of 40 years of
12    age, he was 35 years old at the alleged onset of his
13    disability on March 1, 2017.  Plaintiff stands approximately
14    5 foot 6 inches in height and has weighed at various times
15    between 205 and 222 pounds.  Plaintiff lives in Binghamton
16    with his -- the record is equivocal as to whether she is his
17    wife or girlfriend, they have been together for some 15
18    years.  They live in some sort of shared house arrangement.
19    Plaintiff moved from Iowa in 2018 to be near his father.  At
20    various times he has been homeless or living in a shelter.
21    Plaintiff has a 10th grade education and while in school was
22    in special education classes in Iowa based on a learning
23    disability.  Plaintiff has no driver's license, although he
24    at one point did possess one.
25             Plaintiff stopped working in May of 2008.  His past

1  work includes as a part-time dishwasher for a brief period of
2  time, factory laborer, he worked part time in various
3  fast-food settings including at Burger King and McDonald's.
4          Physically, plaintiff suffers from several
5  impairments, including obesity, arthritis, bilateral shoulder
6  pain based on a 2016 motor vehicle accident, he suffers from
7  carpal tunnel syndrome, status post release on the right
8  wrist, asthma, some bowel issues, right hip pain, right knee
9  pain, lower back pain, migraines, seizures, and hypertension.
10         Mentally, plaintiff has been diagnosed with various
11 conditions, including borderline personality disorder,
12 paranoid schizophrenia, general anxiety disorder, bipolar
13 disorder, intellectual disorder, and poly-substance abuse.
14 It appears that he was sexually abused as a child and has had
15 various difficulties over time in various relationships.
16         Plaintiff has received treatment, including from
17 Broadlawn Medical Center in Iowa, from 2000 until
18 November 2014 and then again resuming in October 2016 until
19 he moved in 2018.  His primary care physician in Binghamton
20 is Dr. James Hollandt who he began seeing in July of 2018.
21 He also receives mental health treatment from Tioga Mental
22 Health Clinic where he began treatment in April of 2018.  He
23 sees a couple of licensed clinical social workers and
24 licensed master social worker.  His psychiatrist, who he sees
25 one time per month, is Dr. Ejiro Agboro-Idahosa.

                    Plaintiff's activities of daily living include his
ability to perform basic hygiene, groom, cook, clean, manage
finances, he socializes with family and friends, he enjoys
music, watching television, he uses medical transportation
service as required.  Plaintiff has a history of
incarceration as well as poly-substance and tobacco abuse,
marijuana, and methamphetamines.  He claims to be sober for
the past two years.
                    Procedurally, plaintiff applied for Title II and
Title XVI benefits on March 29, 2018 alleging an onset date
of March 1, 2017, and claiming disability in his function
report based on paranoid schizophrenia, bipolar disorder,
attention deficit disorder, multiple personality disorder,
codependency, anxiety, and a learning disability.  A hearing
was conducted by Administrative Law Judge Melissa Hammock on
September 6, 2019 to address plaintiff's application for
benefits on October 9, 2019.  Administrative Law Judge
Hammock issued an unfavorable decision which became a final
determination of the agency on June 22, 2020, when the Social
Security Administration Appeals Council denied plaintiff's
request for review.  This action was commenced on August 18,
2020, and is timely.
                    In her decision, ALJ Hammock applied the familiar
five-step sequential test for determining disability.  She
first noted that plaintiff's last date of insured status was

1    March 30, 2012.
2              At step one she found that plaintiff had not
3    engaged in substantial gainful activity since March 1, 2017.
4              At step two she concluded that plaintiff does
5    suffer from severe impairments that impose more than minimal
6    limitations on his ability to perform basic work functions,
7    including paranoid schizophrenia, generalized anxiety
8    disorder, bipolar disorder, borderline personality disorder,
9    intellectual disorder, and poly-substance abuse.
10             At step three, the administrative law judge
11   concluded that plaintiff's conditions do not meet or
12   medically equal any of the listed presumptively disabling
13   conditions, specifically considering Listings 12.03, 12.04,
14   12.05, 12.06, and 12.08, all of which deal with plaintiff's
15   mental health conditions.
16             After reviewing the medical and other evidence, ALJ
17   Hammock concluded that plaintiff retains some residual
18   functional capacity, or RFC, to perform work at a full range
19   of exertional levels but with nonexertional limitations
20   including, he can perform simple routine tasks and make
21   simple work-related decisions in an environment with no
22   production rate pace and no more than occasional changes in
23   the work routine.  He can have occasional superficial
24   interaction with supervisors and coworkers and he can have no
25   interaction with the public.

1           At step four, ALJ Hammock noted that plaintiff does
2  not have any significant past relevant work and then
3  proceeded to step five where, based on the testimony of a
4  vocational expert, plaintiff was found to be capable of
5  performing available work in the national economy citing as
6  representative positions industrial sweeper, laundry laborer,
7  and cleaner II.
8           As you know, the court's function in this case is
9  limited to determining whether correct legal principles were
10 applied and the resulting determination is supported by
11 substantial evidence, which is defined as such relevant
12 evidence as a reasonable person would find sufficient to
13 support a conclusion.
14          In this case, plaintiff makes three basic
15 arguments.  She contends first at step two that plaintiff's
16 seizures and obesity should have been included in the finding
17 of severe impairments.  The second argument focuses on the
18 weighing of medical opinions and specifically the weight
19 accorded to opinions of Dr. Agboro-Idahosa and Dr. Ferrin.
20 The third argument addresses an alleged conflict between the
21 testimony of the vocational expert and the *Dictionary of*
22 *Occupational Titles*, and the failure to resolve and explain
23 the resolution of that conflict.
24          As you know, as an overarching consideration, it is
25 plaintiff's burden through step four to prove that his

conditions create and cause limitations that preclude him from performing available work.  Additionally, the issue is not what the court would do when faced with the record that was developed before the agency, but rather, whether the resulting determination, again, was supported by substantial evidence and resulted from the application of proper legal principles.

First addressing the step two argument, the governing regulations provide that an impairment or combination of impairments is not severe if it does not specifically limit a claimant's physical and mental ability to do basic work activities.  20 C.F.R. Section 404.1521.  The regulation goes on to describe what is meant by the phrase basic work activities, defining that term to include the abilities and aptitudes necessary to do most jobs.  The second step requirement, as the plaintiff has argued, is clearly de minimus and intended only to screen out the truly weakest of cases.  *Dixon v. Shalala*, 54 F.3d 1019 at 1030, Second Circuit 1995.  Significantly, and importantly, however, the mere presence of a disease or impairment or establishing that a person has been diagnosed or treated for a disease or impairment is not by itself sufficient to establish a condition as severe.  *Coleman v. Shalala*, 895 F.Supp. 50 at 53, Southern District of New York 1995.

The focus of the argument in this case is upon

1  obesity and seizures.  The administrative law judge explained
2  the rejection of plaintiff's physical conditions, including
3  obesity and seizures, as not being severe, pages 13 and 14 of
4  the administrative transcript.  It was noted, for example,
5  with regard to obesity that there was no indication from
6  plaintiff's respiratory exam, which was normal, that the
7  obesity did not appear to affect that, nor did it affect his
8  mobility or breathing in any notable way.  I note,
9  significantly, that with regard to obesity, plaintiff did not
10 mention his obesity at either the hearing or in his function
11 report as a reason why he's not capable of performing basic
12 work activities.  And there's no proof in the record that
13 plaintiff has pointed to that shouldered the burden of
14 establishing any such limitation.
15          With regard to seizures, plaintiff was not taking
16 anti -- has not taken antiseizure medications regularly.
17 There's no evidence of any observation of any seizures, no
18 encephalogram or objective confirmation of seizures, and at
19 433, the plaintiff told the consultative examiner,
20 Dr. Magurno, that his most recent seizure was in 2015.  I
21 think that, despite the modest test at step two, the
22 rejection of those physical conditions as being severe is
23 supported by substantial evidence and was proper.
24          Turning next to the medical opinions of record, the
25 date on which this case, or the application in this case was

1  filed means that the new regulations regarding the weighing
2  of medical opinions applies.  Under the new regulations, an
3  ALJ does not have to give any specific evidentiary weight,
4  including controlling weight, to any medical opinions,
5  including those from claimant's medical sources.  20 C.F.R.
6  Sections 404.1520c(a) and 416.920c(a).  Instead, an ALJ must
7  weigh those opinions using the relevant factors including,
8  significantly, supportability and consistency.  The ALJ must
9  articulate how persuasive he or she found each medical
10 opinion and must explain how he or she considered the
11 supportability and consistency of those medical opinions.
12 The ALJ may also, but is not required to, explain the
13 consideration of other relevant factors as appropriate in
14 each case, including the source's relationship with the
15 claimant, including the length of the treatment relationship,
16 frequency of examinations, purpose of the treating
17 relationship, the extent of the treating relationship, and
18 whether it was merely an examining relationship, the
19 specialization, if any, of the source and other factors that
20 tend to support or contradict the medical opinion.
21         The focus of this argument is on, first, the
22 treatment of Dr. Agboro-Idahosa's opinion from June 24, 2019.
23 That opinion, of course, is extremely limiting.  The
24 administrative law judge cited and recounted the various -- I
25 should say the opinion is, appears at 456 to 462 of the

1    record and is repeated at 986 to 992 with the exception of
2    the last page.  The opinion of Dr. Agboro-Idahosa offers
3    opinions in each of the, I'll call them the B domains, and
4    lists various degrees, from none to extreme or inability to
5    function, and that is defined as approximately more than
6    20 percent of the workday or workweek.  In understanding,
7    remembering, or applying information, the plaintiff is rated
8    as extreme in six of the subcategories and marked or serious
9    in two others.  In interacting with others, he is rated as
10   extreme in two and marked or serious in three.  In
11   concentrating, persistence, or maintaining pace, extreme in
12   two and five in marked or serious.  In adapting and managing
13   self, four in extreme and five in marked or serious.
14   Dr. Agboro-Idahosa also opines that plaintiff would likely be
15   absent more than four days per month and late to work more
16   than four days per month.
17            That opinion was discussed at page 22 to 23 of the
18   administrative transcript by the administrative law judge who
19   found it to be very limiting and inconsistent with work but
20   found it overly restrictive and not persuasive.  The reasons
21   cited are fourfold and include that his noted mental status
22   exam findings of record do not support it, but shows that the
23   claimant retained unimpaired attention, concentration,
24   memory, insight, and judgment despite the fluctuating
25   symptoms; two, Dr. Agboro-Idahosa did not provide direct

citations to his objective notes; three, he appeared to primarily rely on claimant's own subjective reports; and four, was not provided on a function-by-function format. The last of those the Commissioner concedes is not a valid reason for rejection of the opinion.

The opinions of Dr. Agboro Idahosa are consistent and supported by, at least in part, by the consultative examination of Dr. Slowik, that's reported at 426 to 430, who finds moderate limitations in several categories, a marked limitation in plaintiff's ability to understand, remember, and apply complex directions and instructions and regulate emotions, marked to -- moderately to marked limitations in the ability to interact adequately with supervisors, coworkers, and the public and sustained concentration. It is also consistent with the opinions of plaintiff's treating primary care provider, Dr. Hollandt.

Dr. Agboro-Idahosa is a psychiatrist, a professional in that field. He has treated plaintiff since September 2018, has great longitudinal knowledge of the plaintiff. And although it is true that the treating source rule was abrogated under the new regulations, there are cases that suggest and I think the relevant factors that I read equally suggest that the fact of a treating relationship is still an important consideration. As was noted in *Shawn H. v. Commissioner of Social Security*, Civil Action Number --

1   well, 20 -- I'm sorry, 2-, 2:19-CV-113, it was reported at
2   2020 U.S. Dist. LEXIS 123589, it was noted by my good friend
3   and colleague Magistrate Judge John Conroy that under the new
4   regulations, they still recognize the foundational nature of
5   the observations of treating sources, and consistency with
6   those observations is a factor in determining the value of
7   any treating source's opinion.
8        It's a mental health case, and although the
9   administrative law judge cites this as a reason, it is
10  entirely appropriate, and particularly in mental health
11  cases, for a professional psychiatrist to rely on a
12  plaintiff's accounts of symptoms.  And in a complex mental
13  health case, which this clearly is, the perspective of a
14  treating psychiatrist is important.  And although this case
15  was decided under the old regulations, I think it still has
16  vitality, *Prior v. Commissioner of Social Security*, 2020 WL
17  1445963, Western District of New York, March 25, 2020.  I
18  believe it was error to discount Dr. Agboro-Idahosa's
19  opinions, and the error was harmful.
20       And turning to Dr. Ferrin.  Dr. Ferrin, a
21  nonexamining consultant, issued an opinion on June 6, 2018
22  that is found at Exhibits 1A and 2A of the administrative
23  transcript.  He addressed the so-called B criteria under the
24  listings and found only moderate limitations in the ability
25  to understand, remember, or apply information, interacting

1   with others; concentration, persistence, and maintaining
2   pace, mild; and adapting and managing one's self, moderate.
3   In his later mental residual functional capacity finding, he
4   concluded that plaintiff retains the ability to perform
5   basically simple work, he is able to understand and remember
6   simple and detailed instructions.  The claimant can adapt to
7   changes in a routine work setting and can use appropriate
8   judgment to make work-related decisions.  He found that
9   plaintiff was moderately limited in the ability to understand
10  and remember detailed instructions, the ability to carry out
11  detailed instructions, the ability to maintain attention and
12  concentration for extended periods, the ability to perform
13  activities within a schedule, the ability to complete a
14  workday and workweek without interruption, the ability to
15  interact appropriately with the general public, the ability
16  to accept instructions and respond appropriately and the
17  ability to respond appropriately to changes in the work
18  setting.
19          The administrative law judge discussed the opinions
20  of Dr. Ferrin at page 24 and found them implicitly, I would
21  say that there was clearly no specific statement to this
22  effect, but very implicit in his decision is that he found
23  Dr. Ferrin's opinion persuasive.  The plaintiff argues that
24  Dr. Ferrin's opinion should not be relied on because it was
25  based on review of only partial records.

1             First, let me say I do agree with the Commissioner
2     that under the right circumstances, the opinion of a
3     consultative examiner can trump the opinion of a treating
4     source if it meets the consistency and supportability test
5     under the new regulations.  The Second Circuit as much as
6     said that in *Camille v. Colvin*, 652 F.App'x 25 from the
7     Second Circuit 2016.  However, I also agree that Dr. Ferrin
8     very clearly did not have the benefit of a complete record,
9     and although that does not necessarily disqualify the opinion
10    as being relied upon, if there is significant subsequent
11    treatment, particularly if the condition has worsened, then
12    relying upon that opinion that is only based on partial
13    records does not satisfy the substantial evidence test.
14            Here, the -- I'm not sure the administrative law
15    judge's discussion of Dr. Ferrin's opinion is sufficient to
16    permit meaningful review.  It is also clearly inconsistent
17    with Dr. Agboro-Idahosa, Dr. Hollandt, and Dr. Slowik.  And
18    although it is proper, again, to rely on a nonexamining
19    consultant's opinion, it is particularly weak evidence.
20    *Abate v. Commissioner of Social Security*, 2020 WL 2112322
21    from the Eastern District of New York, May 4, 2020, another
22    case that was cited under the former regulations but I think
23    equally applicable under the new.
24            Significantly, the only records from the Tioga
25    County Department of Mental Hygiene that were reviewed was

1    the April 2018 intake, did not have the benefit of subsequent
2    treatment records.
3              In my view it was an error, if he did find the
4    opinion persuasive, to rely on that opinion to formulate his
5    residual functional capacity.  So I do find error in the
6    weighing of medical opinions.  I find that those errors are
7    harmful because those opinions that were rejected are
8    inconsistent with the residual functional capacity and
9    accordingly, the vocational expert's hypothetical and
10   testimony, and it does therefore affect the step five
11   determination.
12             I note because of this finding, I will not address
13   the DOT conflict issue.
14             The plaintiff has asked that the decision be
15   vacated with a directed finding of disability; I don't find
16   such persuasive evidence of disability that meets the rigid
17   test for taking that step.  Instead, I am going to vacate the
18   determination of the Commissioner and remand the matter for
19   further proceedings consistent with this opinion.  So I will
20   grant judgment on the pleadings to plaintiff on that basis.
21   Thank you both for excellent presentations, please stay safe.
22             MS. LOMBARDI:  Thank you, your Honor.
23             MR. POTTER:  Thank you, your Honor.
24             MS. LOMBARDI:  Stay safe, everyone.
25                  (Proceedings Adjourned, 12:01 p.m.)

```
 1              CERTIFICATE OF OFFICIAL REPORTER
 2
 3
 4        I, JODI L. HIBBARD, RPR, CRR, CSR, Federal
 5   Official Realtime Court Reporter, in and for the
 6   United States District Court for the Northern
 7   District of New York, DO HEREBY CERTIFY that
 8   pursuant to Section 753, Title 28, United States
 9   Code, that the foregoing is a true and correct
10   transcript of the stenographically reported
11   proceedings held in the above-entitled matter and
12   that the transcript page format is in conformance
13   with the regulations of the Judicial Conference of
14   the United States.
15
16                    Dated this 7th day of January, 2022.
17
18
19                    /S/ JODI L. HIBBARD
20                    JODI L. HIBBARD, RPR, CRR, CSR
                      Official U.S. Court Reporter
21
22
23
24
25
```